# In the United States Court of Federal Claims

No. 20-1396 T

(Filed: August 31, 2021)

(NOT FOR PUBLICATION)

```
* * * * * * * * * * * * * * * * * *  *
                                      *
JIBRIL L. IBRAHIM,                    *
                                      *
                  Plaintiff,          *
                                      *
      v.                              *
                                      *
THE UNITED STATES,                    *
                                      *
                  Defendant.          *
                                      *
* * * * * * * * * * * * * * * * * *  *
```

*Jibril L. Ibrahim*, *pro se*, of Washington, D.C.

*Richard J. Markel*, Trial Attorney, Court of Federal Claims Section, Tax Division, Department of Justice, of Washington, D.C., for defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

Plaintiff Jibril L. Ibrahim, proceeding *pro se*, filed a complaint alleging that he is owed refunds from the Internal Revenue Service ("IRS") for tax years 2012, 2014, and 2018, and that the IRS "is vindictive toward plaintiff because of a prior lawsuit" he filed against the agency. ECF No. 1 at 1-2 ("Compl.").[1]  In addition to obtaining the refunds to which he claims he is entitled, Plaintiff requests the Court "[o]rder the [IRS] to pay daily interest on his returns" and "enjoin [the IRS] from retaliating on plaintiff each tax year." *Id*. at 3.

Pending before the Court is the government's motion to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  ECF No. 12 ("Gov.'s Mot. to Dismiss").  The motion has been fully briefed. As explained below, Plaintiff's claims do not fall within this Court's jurisdiction and, accordingly, must be dismissed.

---

[1] Plaintiff at times refers to his allegedly owed tax refunds as tax "returns."  Compl. 1, 3.  The Court construes these as allegations of owed refunds.

## BACKGROUND

Plaintiff brings this action to "[o]rder the release of [his] 2012, 2014 and 2018 tax [refunds]." Compl. at 3.  Plaintiff alleges that in 2012, he filed a tax return "anticipating a refund." Compl. at 1.  "However, plaintiff never received any refund nor explanation as to where his refund was," and was informed by the IRS in 2018 that he "wasn't due a [refund]" for 2012.  *Id*.  For tax year 2014, Plaintiff alleges he filed a return and expected a refund, but the IRS "[allocated] plaintiff's refund to an organization to pay a debt plaintiff never had." *Id*.  He "just received word in 2019 . . . that no [2014] refund was due to plaintiff." *Id*.  For tax year 2018, Plaintiff "filed yet another federal tax return" but was "informed he had an outstanding debt from 2015." *Id*.  Plaintiff "agreed to pay [$]75.00 a month toward this debt," but the IRS "started taking funds from [Plaintiff's] Social Security checks monthly to pay off this debt." *Id*. at 1-2.  Plaintiff further alleges that he "filed a return for his 2019 taxes," but the IRS "confiscated plaintiff's refund to pay part of taxes owed" for previous tax years. *Id*. at 2.  Plaintiff "believes the [IRS] is vindictive . . . because of a prior lawsuit filed against the [IRS] in 2014, where plaintiff prevailed."[2]  *Id*.  Based on these statements, Plaintiff requests that the Court "[o]rder the release of his 2012, 2014[,] and 2018 tax [refunds,]. . . . the [IRS] to pay daily interest on his [refunds,]. . . . [and] enjoin the [IRS] from retaliating on plaintiff each year." *Id*. at 3.

On February 5, 2021, the government moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  The government asserts that Plaintiff "has no refundable overpayment of taxes" for years 2012 and 2014.[3]  Gov.'s Mot. to Dismiss at 1.  "As there is nothing left to refund for either year, Plaintiff has failed to state claims upon which relief can be granted, so these claims should be dismissed." *Id*. at 5.

---

[2] Indeed, Plaintiff previously filed suit against the IRS in this Court, but he did not "prevail" on a tax refund claim.  Rather, the Court dismissed his refund claim for lack of subject matter jurisdiction—Plaintiff had not fully paid the disputed taxes—but, in liberally construing his pleadings, permitted Plaintiff to proceed with an illegal exaction claim related to a Treasury offset of his refund to the Department of Education.  *See Ibrahim v. United States*, 112 Fed. Cl. 333, 337 (2013).

[3] According to the government's motion:

> Plaintiff's 2012 and 2014 claims should be dismissed for failure to state a claim upon which relief can be granted.  Examining the 2012 Form 4340 shows that Plaintiff reported a $2,501 tax liability and was assessed $2.37 in interest and penalties.  His withholding for the year was $2,332, and he made additional payments of $171.37 on May 31, 2013 and $100 on September 29, 2014.  Plaintiff's $100 overpayment was transferred out to his 2011 tax year.  This treatment of the credit or refund is explicitly permitted under [I.R.C.] § 6402(a).  Likewise, the 2014 Form 4340 shows that Plaintiff's tax for the year was $836, and he had withholding and tax credits of $32 and $3,239, respectively.  The IRS applied $1,342.87 to Plaintiff's outstanding 2011 tax liability and $1,092.13 to non-IRS debt, per [I.R.C.] § 6402(d).  In sum, Plaintiff already received a refund for the 2012 and 2014 tax years—those refunds were applied against outstanding taxes from other years.

Gov.'s Mot. to Dismiss at 4-5 (citations to exhibits omitted).

Moreover, according to the government, any refund claims for tax years 2012 and 2014 "are time-barred on their face." *Id*. at 1.  The government cites section 6511 of the Internal Revenue Code ("I.R.C."), requiring that a claim for credit or refund of an overpayment "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ." 26 U.S.C. § 6511(a). Because "Plaintiff filed his 2012 and 2014 tax returns on June 3, 2013 and April 6, 2015, respectively," Gov.'s Mot. to Dismiss at 5 (citing ECF No. 12-1 at App. 2, 5), and because "[Plaintiff's] most recent payments for those years were in 2014 and 2015, . . . even if he had a refundable overpayment for either year . . . he would not be entitled to recover," *id*. at 5-6.[4]

As for tax year 2018, the government argues that the Court lacks jurisdiction because Plaintiff has not yet fully paid the taxes owed.  According to the government, "as the Form 4340 demonstrates, Plaintiff has not fully paid his 2018 taxes." *Id*. at 6 (citing ECF No. 12-1 at App. 10).  Thus, "[h]e has not satisfied the full-payment requirement necessary to invoke this Court's jurisdiction for his 2018 claim." *Id*.[5]

In response, Plaintiff "submits that the government was correct regarding a prior 2014, 2012 debt which was paid off." ECF No. 13 at 1 ("Pl.'s Resp.").  However, Plaintiff further asserts that he agreed "to pay installments of $75.00 a month, an agreement accepted by both [Plaintiff] and Defendant.  This was a contract reached by each party.  Nevertheless, Defendant breached the terms of the agreement by confiscating [Plaintiff's] refund check of $1498.00, a [refund] due from his 2019 tax filings." *Id*.  Plaintiff attached a notice from the IRS, dated May 25, 2020, which states that the IRS "applied $1,498.00 of your 2019 Forms 1040 overpayment to an amount owed for 2015.  As a result, the amount you owe for December 31, 2015 is $908.74." *Id*. at 2.  Plaintiff's response does not otherwise respond to the government's arguments for dismissal.

In reply, the government argues that "[Plaintiff's] response fails to state a plausible claim [for] relief for tax year 2015." ECF No. 14 at 1 ("Gov.'s Reply").  According to the government, "[Plaintiff] is not entitled to relief because the IRS was allowed to do exactly what it did," *id*. at 2, pursuant to the I.R.C., which provides that "the Secretary . . . may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an

---

[4] The government also cites I.R.C. § 6511's "look-back" provision as barring Plaintiff any recovery for years 2012 and 2014:

> Additionally, as a backstop, [I.R.C.] § 6511(b)(2)(A) also limits the amount of any credit or refund allowed, such that it "shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return."  Said another way, taxpayers may not recover any amounts paid before the start of the applicable "look-back" limitation period immediately preceding the filing of a refund claim.

Gov.'s Mot. to Dismiss at 5 (citation omitted).

[5] The government's motion also argues that Plaintiff's allegation that the IRS is "vindictive" and retaliating against Plaintiff, "if it even is a separate claim," should be dismissed for failing to meet the pleading requirements of RCFC 8 and, moreover, "sounds in tort more than anything else," which it argues would be beyond this Court's subject matter jurisdiction.  Gov.'s Mot. to Dismiss at 6-7.

internal revenue tax on the part of the person who made the overpayment," 26 U.S.C. § 6402(a). "Here, [Plaintiff's] 2019 overpayment was credited against his past-due 2015 taxes." Gov.'s Reply at 2. The government also asserts that "an installment agreement is not enforceable under contract law for want of consideration." *Id*. (citing *United States v. Ullman*, CIV.A. 01-0272, 2002 WL 987998 at *3-4 (E.D. Pa. May 8, 2002)). "[A]n installment agreement merely reflects the IRS choosing to 'accommodate' a taxpayer when the Service 'believes that a payment plan will facilitate collection,'" and Plaintiff "gave nothing in exchange for a payment plan because he was already obligated to pay his 2015 taxes." *Id*. (citation omitted).

## DISCUSSION

### 1. Legal Standard

Pursuant to RCFC 12(b)(1) and 12(h)(3), this Court must dismiss any claim that does not fall within its subject matter jurisdiction. In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all undisputed factual allegations made by the non-moving party and draw all reasonable inferences in the light most favorable to that party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2004) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.").

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, the Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, though, "does not, of itself, create a substantive right enforceable against the United States . . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to establish jurisdiction in this Court, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id*.

"[I]n the context of tax refund suits, . . . Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citations omitted). Thus, to the extent a plaintiff seeks a refund of federal taxes that are alleged to have been "erroneously or illegally assessed or collected," the plaintiff must meet the jurisdictional threshold in 26 U.S.C. § 7422(a), which provides that a taxpayer must first file an administrative claim for a refund with the IRS before bringing an action in any court. 26 U.S.C. § 7422(a); *see also United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) ("[A] taxpayer must file an administrative claim with the Internal Revenue Service before filing suit against the Government."). Moreover, the "full payment" rule requires that a taxpayer pay the tax assessed by the IRS before bringing a tax refund claim in this Court. *Shore v. United States*, 9 F.3d 1524, 1525-27 (Fed. Cir. 1993). When the taxpayer "has not yet paid the assessed tax for which he seeks a refund, the trial court is without jurisdiction to

hear his claim for a refund." *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002). Unless these jurisdictional prerequisites are met, the Court must dismiss a plaintiff's case.

To aid in the jurisdictional analysis of tax cases, RCFC 9(m) sets forth special pleading requirements for tax refund claims. Pursuant to RCFC 9(m), for a tax refund claim, a plaintiff must provide, among other things, the amount, date, and place of each payment to be refunded, as well as a copy of the claim for refund. RCFC 9(m). "The requirements of [RCFC 9(m)] embody the jurisdictional prerequisites for maintaining such a suit in this court." *Simmons v. United States*, 127 Fed. Cl. 154, 160 (2016).

Plaintiffs proceeding *pro se* are entitled to a liberal construction of their pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, all plaintiffs still bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

2.  **Analysis**

Viewing the facts in the light most favorable to Plaintiff—and affording his pleadings the liberal construction to which a *pro se* litigant is entitled—Plaintiff's complaint fails to establish this Court's subject matter jurisdiction. Accordingly, it must be dismissed.

As an initial matter, with regard to the refunds Plaintiff claims he is owed for tax years 2012 and 2014, it appears that Plaintiff concedes in his response to the government's motion to dismiss that he was incorrect and that, in fact, no refunds are due for 2012 and 2014. Pl.'s Resp. at 1 ("[U]pon perusal of records, plaintiff submits that the government was correct regarding prior 2014, 2012 debt which was paid off."). Given Plaintiff's concession, Plaintiff's claims for refunds for 2012 and 2014 must be dismissed.

To any extent that the Court is misconstruing Plaintiff's response as a concession of his claims related to 2012 and 2014, the Court must nonetheless dismiss those claims, along with his claim for a refund for 2018, because these claims are not within the Court's subject matter jurisdiction. To begin with, Plaintiff's complaint does not comply with RCFC 9(m), which requires a party seeking a tax refund to, among other things, include a copy of the administrative claim for refund, along with a statement identifying the amount, date, and place of each payment to be refunded, and the date and place the claim for refund was filed. RCFC 9(m). Plaintiff's complaint neither identifies nor attaches any of these required documents. In fact, his complaint references no specific dollar amounts at all, aside from the "[$]75.00 a month" that Plaintiff allegedly agreed to pay in 2018 to resolve a remaining tax liability for 2015. Compl. at 1; *see also* Gov.'s Mot. to Dismiss at 2 ("He does not specify what amounts he seeks to recover nor allege the IRS erred when it declined to send him a refund, let alone that one was even due.").

As the government correctly identifies, 26 U.S.C. § 7422 provides that a taxpayer may bring an action in this Court to recover a tax "alleged to have been erroneously or illegally assessed or collected," provided that *the taxpayer first timely files a claim for a refund with the*

*IRS.* 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary . . . ."); *see also Clintwood Elkhorn Mining Co.*, 553 U.S. at 4. Administrative refund claims must be timely filed, in accordance with the limitations periods provided in 26 U.S.C. § 6511(a), and any lawsuit challenging a denied administrative claim for refund must be filed within two years after the denial. 26 U.S.C. § 6532(a)(1). Yet, neither Plaintiff's complaint nor his responsive brief provides any evidence or even suggests that he filed an administrative claim for refund with the IRS; therefore, this Court is unable to verify whether the statutory prerequisites for jurisdiction are met. *Pro se* plaintiffs are indeed entitled to leniency in their pleadings, but they nevertheless, like all plaintiffs, bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Reynolds*, 846 F.2d at 747-748. Plaintiff falls short of providing even a scintilla (let alone a preponderance) of evidence that his claim for "the release of [his] 2012, 2014 and 2018 tax [refunds]," Compl. at 3, may be appropriately heard in this Court. And simply informing the Court that he "anticipat[ed]" or "expected" a refund does not carry Plaintiff's burden to satisfy these jurisdictional requirements. Compl. at 1.

The government's motion to dismiss includes copies of IRS Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters for Jibril L Ibrahim," demonstrating Plaintiff's tax liabilities and other tax-related transactions (such as penalties, subsequent payments, refunds, and overpayment transfers) carried out by the IRS for tax years 2012, 2014, and 2018. ECF No. 12-1. While not necessary in deciding the instant matter, given Plaintiff's failure to carry his own jurisdictional burden, the Court reviewed the documentation in search of anything that might shed light on or support Plaintiff's allegations. None of the records provide any indication that Plaintiff filed an administrative claim for a refund.[6]

Moreover, as to tax year 2018, the government is correct that any claim for refund here would—based on the information before the Court—run afoul of the full payment rule. Gov.'s Mot. to Dismiss at 6; *see also Ledford*, 297 F.3d at 1382 (citing *Flora v. United States*, 362 U.S. 145, 177 (1960)). The record indicates that Plaintiff has a remaining balance of $825.52 for 2018. ECF No. 12-1 at App. 10. Just like the statutory prerequisite of filing an administrative claim with the IRS, the full payment rule is jurisdictional. Because Plaintiff has not fully paid his 2018 liability, he cannot proceed in this Court on his claim for a refund for that tax year.

In sum, even leaving aside Plaintiff's apparent concession regarding his claims relating to tax years 2012 and 2014, the Court finds nothing in the record or pleadings to salvage any of

---

[6] The Court notes that Plaintiff's claim regarding tax year 2014 does not fit as conveniently into the "tax refund" lane as the government's motion to dismiss suggests. Plaintiff's complaint alleges that the IRS "[allocated] plaintiff's [2014] refund to an organization to pay a debt plaintiff never had." Compl. at 1; ECF No. 12-1 at App. 5 (providing a copy of Plaintiff's Form 4340 for 2014, which shows that on April 6, 2015, "Treasury Offset to Another Agency[.] Refund Reduced By: $1,092.13."). Construing this allegation liberally, the Court could read it not as a tax refund claim but as an illegal exaction claim—grounds on which Plaintiff partially survived dismissal in his 2013 action. *See Ibrahim v. United States*, 112 Fed. Cl. 333, 336 (2013). However, as was discussed above, Plaintiff conceded in his response that after he "retriev[ed]" and "perus[ed]" his tax records, he "submits that the government was correct regarding a prior 2014, 2012 debt which was paid off." Pl.'s Resp. at 1. Thus, to whatever extent Plaintiff had articulated what could have been construed as an illegal exaction claim, that claim does not survive Plaintiff's concession in his response to the government's motion to dismiss.

Plaintiff's claims for relief.[7]  Instead, Plaintiff fails to establish this Court's subject matter jurisdiction.

## CONCLUSION

For the forgoing reasons, the Court lacks jurisdiction over Plaintiff's complaint.  Accordingly, the government's motion to dismiss is **GRANTED**.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

                                          s/ Zachary N. Somers
                                          ZACHARY N. SOMERS
                                          Judge

---

[7] To the extent that Plaintiff's response brief could be construed as raising refund claims for either tax year 2015 or 2019, both claims would presumably fail for the same reasons that his 2012, 2014, and 2018 claims fail.  No evidence (whatsoever) of an administrative claim for refund is found in the record.  Thus, the statutory prerequisite for jurisdiction is not met.  Moreover, the Court notes that a response to a motion to dismiss is not the proper vehicle for raising alternative claims; such claims should have been pled in Plaintiff's complaint.